Corrigan, C.J.
I respectfully dissent from the majority’s decision to suspend respondent for fifteen days for certain statements he made in the aftermath of an automobile accident. I would hold that respondent’s actions, while certainly not exemplary, did not constitute judicial misconduct because his conduct was not clearly prejudicial to the administration of justice.
i
These proceedings arise from a car accident involving respondent and another driver in Pontiac. Pontiac police officers responded to a call for assistance and investigated. Respondent told an officer with whom *142 he was acquainted that the other driver had been traveling at eighty-five miles an hour. He then requested that the officer run the other driver’s name on the Law Enforcement Information Network (lein), and urged the officer to ticket the other driver. The officer did not, however, issue a ticket. The owner of the other car later brought an action in 50th District Court to recover his insurance deductible.
The Judicial Tenure Commission (JTC) complaint alleged misconduct arising from (1) respondent’s conduct at the accident scene, (2) respondent’s transfer of the district court action to another judge, and (3) respondent’s conduct during the hearing on the district court lawsuit. The complaint also alleged misconduct arising from respondent’s conduct during an unrelated criminal case and his unrelated actions in presiding over uncontested and default matters involving his court officer.
At the conclusion of an evidentiary hearing, the master determined that the examiner failed to establish judicial impropriety and that respondent did not violate the code of judicial conduct, court rules, or the constitution. The master found that respondent “informed the officers of [the other driver’s] excessive speed (the testimony varies between 85 and 50 miles per hour) and . . . stated his desire to have [the other driver] run on a lien [sic] machine and ticketed . . . .” The master further found that reason existed to believe that the other driver had been speeding, although the evidence did not support respondent’s claim that the car had been traveling at eighty-five miles an hour. The master characterized respondent’s statement that the other car was traveling “85 miles per hour” as a “hyperbolic exaggeration and not a deliberate falsification, similar perhaps to *143 claiming that ‘she was going like a bat out of Hell.’ ” The master rejected all the remaining allegations in the complaint.
The jtc affirmed the master’s finding that respondent made the statements at the accident scene, but rejected the master’s conclusion that respondent had not abused the prestige of his office. The jtc found that respondent’s conduct violated Canons 1 and 2(A)-(C) of the Code of Judicial Conduct.[1] It found that respondent’s conduct constituted misconduct under MCR 9.205(C)(4) because it was clearly prejudicial to the administration of justice. The JTC adopted the master’s findings and conclusions regarding the other allegations of misconduct. It recommended that this Court suspend respondent for fifteen days.
*144 n
In this case, the jtc recommends discipline solely on the basis of respondent’s conduct at the accident scene. Thus, while the complaint certainly alleged other misconduct, I have confined my review solely to judicial misconduct arising from respondent’s statements to the investigating officers because this Court may discipline a judge only “[o]n recommendation of the judicial tenure commission.” Const 1963, art 6, § 30; see In re Mikesell, 396 Mich 517, 524-527; 243 NW2d 86 (1976). I conclude that the jtc failed to prove by a preponderance of the evidence[2] that respondent attempted to use the prestige of his office to gain a personal advantage and that his conduct was clearly prejudicial to the administration of justice.
In my view, the determination whether respondent’s conduct was clearly prejudicial to the administration of justice hinges on respondent’s intent in making statements to the officers at the accident scene. The master found that respondent was “shaken, excited and emotional” after the accident. The master further characterized respondent’s statement regarding the speed of the other driver’s car as “hyperbole.” I would defer to those findings because, although this Court reviews the record de novo, In re Loyd, 424 Mich 514, 521; 384 NW2d 9 (1986), we accord deference to the master’s ability to observe witnesses’ demeanor and evaluate their credibility. Id. at 535. I thus defer to the master’s credibility finding that respondent did not intentionally lie to the officer. I am frankly puzzled by the JTC majority’s finding of *145 an intentional falsehood. They gave no reason for concluding that the master erred in his contrary credibility determination.[3]
I further agree with the majority’s characterization of respondent’s statement at the accident scene as a “spontaneous speculation” induced by “stress” in the immediate aftermath of an automobile accident. I accept and see no clear error in the finding of the Master that Judge Brown’s statement was hyperbole. Further, I accept the master’s finding that Judge Brown had no insidious motive.
In light of this conclusion, I would not hold that Judge Brown knowingly and intentionally attempted to use the prestige of his office to gain a personal advantage. I cannot say with any degree of certainty that he attempted to misuse the prestige of his office to gain a personal advantage. His conduct seems to me equally likely the spontaneous reaction of a shaken accident victim.
The majority rule is that a judge-victim who is acquainted with the police officers who are conducting an investigation may provide a report about the relevant facts, but cannot recommend any action on the basis of those facts. Thus, a judge who is a victim of an armed robbery may report the underlying facts involved in the crime, but may not say, “There’s *146 the robber — arrest that man.”[4] The direction to arrest may demonstrate a misuse of office to advance personal interests in recovering the judge’s stolen property.
Next, I cannot join the conclusion that Judge Brown’s statements at the accident scene were part of a “pattern and practice” of misconduct on the basis of prior jtc admonitions against Judge Brown. Judge Brown’s excited utterances at the accident scene were unique, isolated events, different in kind from the events and statements that formed the basis of the prior jtc admonitions. I cannot join the conclusion that Judge Brown’s conduct at the accident scene demonstrates a pattern and practice of misconduct.
I would reject the jtc recommendation in this case because respondent’s conduct at the accident scene was not clearly prejudicial to the administration of justice. The record does not reflect that the other driver heard respondent’s remarks. Nor does it establish that respondent’s statements influenced the officer’s decision to issue a ticket. That a motorist whose vehicle has been struck in an accident would request in the immediate aftermath that the responding officer ticket the driver of the other car is not unusual. That a judge, still shaken from the accident, would make a similar request is not prejudicial to the administration of justice. Moreover, respondent’s comment requesting a LEIN check does not, under the circumstances of this case, elevate respondent’s conduct to a level that clearly prejudices the administration of justice. The master found that respondent *147 acted without an insidious motive. Accordingly, I would decline to impose discipline on the basis of respondent’s conduct at the scene of the accident.[5]
*148 in
I conclude that respondent’s actions were not clearly prejudicial to the administration of justice. I would therefore reject the jtc recommendation to discipline respondent. Accordingly, I dissent.

 Canon 1 provides in part that “[a] judge should participate in establishing, maintaining, and enforcing, and should personally observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved.”
Canon 2(A)-(C) provides:
A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.
B. A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person’s race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect.
C. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not use the prestige of office to advance personal business interests or those of others. A judge should not appear as a witness in a court proceeding unless subpoenaed.

 In re Loyd, 424 Mich 514, 521; 384 NW2d 9 (1986).

 Under MCR 9.221(B), the jtc must make written findings of fact and conclusions of law along with its recommendations for action, but may adopt the master’s findings, in whole or in part, by reference. In light of the master’s superior position for purposes of evaluating the credibility of witnesses, however, it is incumbent on the jtc to explain its reasons for rejecting a master’s finding that turns on such a determination. Moreover, absent a hearing at which the witnesses actually testify before the jtc, MCR 9.219, I question whether this Court should reject the master’s finding in favor of a contrary finding by the jtc.

 While an armed robbery is a crime, not an accident, both are startling events likely to trigger in the victim spontaneous, excited utterances.

 Assuming that respondent’s actions constituted misconduct, the misconduct would not warrant a suspension. I also part company from my colleagues in their application of the governing principles set out in our prior order to these facts:
While we do not purport to substitute our judgment for that of the jtc in this regard, some of these standards are obvious. For example, everything else being equal:
(1) misconduct that is part of a pattern or practice is more serious than an isolated instance of misconduct;
(2) misconduct on the bench is usually more serious than the same misconduct off the bench;
(3) misconduct that is prejudicial to the actual administration of justice is more serious than misconduct that is prejudicial only to the appearance of propriety;
(4) misconduct that does not implicate the actual administration of justice, or its appearance of impropriety, is less serious than misconduct that does;
(5) misconduct that occurs spontaneously is less serious than misconduct that is premeditated or deliberated;
(6) misconduct that undermines the ability of the justice system to discover the truth of what occurred in a legal controversy, or to reach the most just result in such a case, is more serious than misconduct that merely delays such discovery;
(7) misconduct that involves the unequal application of justice on the basis of such considerations as race, color, ethnic background, gender, or religion are more serious than breaches of justice that do not disparage the integrity of the system on the basis of a class of citizenship. [461 Mich 1292-1293.]
Application of these factors to this case suggests the lightest form of discipline for those members of this Court who conclude that respondent was engaged in judicial misconduct — a censure. Respondent’s acts were spontaneous, isolated, occurred off the bench, and, at most, gave the appearance of impropriety. Respondent’s conduct did not implicate the actual administration of justice, and did not affect the ability of the justice system to discover the truth in a case. Moreover, the alleged misconduct does not involve the unequal application of justice. Under the circumstances of this case, a suspension is not appropriate.